IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Respondent, | ) | |
| | ) | CRIMINAL ACTION NO. 06-049-CG-N-1 |
| v. | ) | |
| | ) | CIVIL ACTION NO. 09-0636-CG-N |
| KARMELL DEMETRIUS JOHNSON, | ) | |
| Petitioner. | ) | |

**REPORT AND RECOMMENDATION**

Defendant/Petitioner Karmell Demetrius Johnson, through counsel, has filed a Motion to Vacate, Set Aside or Correct Sentence (doc. 124), along with a brief (doc. 134) and additional exhibits (doc. 135). This matter has been referred to the undersigned for appropriate consideration and entry of a Report and Recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The government has responded (doc. 127) to the motion, and petitioner has filed a Reply (doc. 140). Upon though review of the record in this case, including the petitioner's motion and related briefs, it is the recommendation of the undersigned that the Motion be DENIED.

*Procedural History*

Petitioner was charged, along with a codefendant in a nine-count indictment (doc. 10) of various drug and firearm violations. As first noted by the court in its order (doc. 40) of May 9, 2006 setting the change of plea hearing, his co-defendant, Roderick Gulley, chose to plead guilty; the plea agreement (doc. 49) reflecting his plea to Counts III and IV was filed on May 19, 2006. Petitioner states that Gulley thereafter cooperated with the government against him.

The government filed a thirteen-count superseding indictment against petitioner on May 26, 2006 (doc. 56). On April 12, 2006 (doc. 16), and again on June 19, 2006 (doc. 64), the government filed sentencing enhancement information pertaining to Johnson's two prior Alabama felony drug convictions; both notices stated that petitioner faced a mandatory sentence of life imprisonment without release if convicted on Counts One or Three. On July 7, 2006, pursuant to a written plea agreement, Petitioner entered a plea of guilty to Counts One and Eleven. Count One charged Johnson with conspiracy to possess with intent to distribute more than 50 grams of cocaine base; Count Eleven charged him with possession of two semi-automatic handguns during and in relation to a drug trafficking offense.

At the plea hearing, the government stated that defendant had "indicated a desire to cooperate," and asked that he be released to allow him to do so. Doc. 109 at 16. Thereafter, the government twice filed Motions to Postpone Sentencing (docs. 83 and 91) to allow Johnson additional time for his cooperation. Defendant then filed a Motion to Postpone Sentencing (doc. 93) on the grounds that he "needs additional time to complete cooperation." The court granted that motion. Doc. 94. However, because his anticipated cooperation never occurred, the government filed a Motion to Revoke Conditions of Release (doc. 95) under seal, asserting that the "exceptional reasons" on which his release was based no longer existed.

On May 14, 2007, the court imposed sentence: life imprisonment without release on Count One, with a ten-year term of supervised release, and sixty months imprisonment on Count Eleven followed by a supervised release term of five years, to run consecutively. At the close of the hearing, counsel asked whether the court wanted an oral motion of appeal, which the court declined. Doc. 110 at 20-21.

The Court of Appeals for the Eleventh Circuit affirmed the judgment against Johnson in

an unpublished opinion dated May 20, 2008. *See* U.S. v. Johnson, 278 Fed.Appx. 920 (2008). Johnson argued that the trial court had erred by failing to expressly inform him that Count One carried a mandatory term of life imprisonment; the Court of Appeals found no Rule 11 error in the district court's plea colloquy. The Court denied his Petition for Rehearing on June 30, 2008. Thereafter, Johnson timely filed the instant habeas motion on September 28, 2009.

*Issues Raised*

Petitioner raises five claims in support of his habeas motion. Three of the claims allege ineffective assistance of trial counsel: a) by advising him to plead guilty to Count One despite the mandatory sentence of life imprisonment without release which it carried; b) by failing to make an Eighth Amendment challenge to the 100-to-1 enhanced penalty for cocaine base as being cruel and unusual punishment; and c) by failing to request that the Court exercise its discretion to impose a one-to-one crack-to-powder cocaine ratio and by failing to make a constitutional challenge to the mandatory minimum life sentence as violating the equal protection clause of the Fourteenth Amendment. Issue Four is a substantive challenge to the enhanced penalty for cocaine base ["crack" cocaine] as violative of the Eighth Amendment's provision against cruel and unusual punishment. Issue Five similarly challenges the mandatory life sentence, premised on the 100-to-1 crack-to-powder cocaine ratio, as violative of the Fourteenth Amendment's Equal Protection clause.

## Legal Standard

*Habeas*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." U.S. v. Frady, 456 U.S. 152, 165 (1982). A defendant who has exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim

alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. U.S. v. Addonizio, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. U.S., 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim he raises. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Burke v. U.S., 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent. Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." Cross v. U.S., 893 F.2d 1287, 1289 (11th Cir. 1990). Jurisdictional issues, however, are not subject to procedural default because federal courts are of limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking. Harris v. U.S., 149 F.3d 1304, 1306 (11th Cir. 1998).

*Ineffective Assistance of Counsel*

In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient; and (2) that the deficient performance

prejudiced his defense. Strickland v. Washington, 466 U.S. 668 (1984). Under the performance prong, the relevant inquiry is whether counsel's representation was "objectively reasonable." Crawford v. Head, 311 F.3d 1288, 1311 (11th Cir. 2002). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. A petitioner can rebut this presumption only by proving his attorney's representation was unreasonable under prevailing professional norms. Chandler v. U.S., 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (*en banc*). "Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." Id. (quotations and citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." Strickland, 466 U.S. at 690-91.

The petitioner's burden of demonstrating prejudice is high. Under the prejudice prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Instead, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Wellington, 314 F.3d at 1260 (quotations and citations omitted).

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that the Strickland test applies to advice given by counsel in the context of guilty plea discussions. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." Id. at 59. In the context of a claim of ineffective assistance of counsel as it relates to the entry of a guilty plea, the Eleventh Circuit has stated:

> In these cases, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 106 S.Ct. at 370. If the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead, then his allegation of prejudice is insufficient to satisfy Strickland. Id. at 371.

Davis v. U.S., 335 Fed.Appx. 825 (11th Cir. 2009).

*Evidentiary Hearing*

"Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, an evidentiary hearing is not required in every case. For example, no evidentiary hearing is required:

Where the petitioner's claim is "patently frivolous," Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989);

Where the claim is based upon unsupported generalizations, id.;

Where the petitioner "has not allege[d] facts that, if true, would entitle him to relief," Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002);

Where the "facts alleged are not reasonably specific [and] nonconclusory," id. at 714-15;

"[W]here the petitioner's allegations are affirmatively contradicted by the record," id. at 715;

Where the petitioner's version of the facts has already been accepted as true, Turner v. Crosby, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and

6

Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983).

Arguments

*Ineffective Assistance: Advice on Plea*

Petitioner's counsel first argues, in effect, that it is *per se* ineffective to advise a criminal defendant to plead guilty to a count that carries a mandatory sentence of life imprisonment without release, where that sentence is the most that the defendant could receive if he proceeded to trial. He disputes the government's claim that this advice was reasonable, arguing that petitioner had nothing to lose by going to trial. And, while such an argument has some superficial appeal in isolation, it does not hold up on examination in the context of the facts of this case.

In the transcript of the guilty plea hearing (doc. 109) the Court explained, and Johnson affirmed that he understood, the penalties he faced. The following exchange occurred:

> THE COURT: Mr. Johnson, in your case you're pleading guilty to count one and count 11 of the superseding indictment in your case. And the maximum penalty the Court could impose as to count one is a minimum 10 years up to life imprisonment, a fine not to exceed $4 million, a term of supervised release of five years which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be imprisoned for that entire term as well, and a mandatory special assessment of $100.
>
> The United States has filed an enhancement in connection with the indictment in your case and it could subject you, if the Court finds that the qualifying prior felony drug offenses are in fact in your criminal history – that would mean that that would subject you to a minimum mandatory sentence of life imprisonment, if you are convicted on count one. Do you understand those possible consequences of your plea to count one?
>
> MR. JOHNSON: Yes, ma'am.

Id. at 9.

Petitioner alleges and/or offers evidence[1] that his attorneys recommended that he plead guilty, cooperate with the government, and hope for the government to seek a reduction in sentence pursuant to Fed.R.Cr.P. 35. Petitioner had been debriefed by the government on March 24, 2006. Eight months later, on November 29, 2006, the government wrote to petitioner's attorneys and stated that his one interview with Agent Nixon was insufficient to earn a downward departure. The letter states that petitioner had made no effort to follow up and described some of the information given as vague and incomplete. Also, the defendant's failure to cooperate was the basis of the revocation of his release prior to sentencing.

Johnson asserts that his attorneys knew that all he was able to provide was historical information against his three suppliers, and further knew that such information was insufficient to convince the government to request a reduction in sentence for substantial assistance. The letter provides that he could still earn a downward departure, and should contact Agent Nixon to arrange it. As petitioner did not provide even details of the historical information of which he had knowledge, and did not follow up on his original debriefing, there is no evidence [or reasonably specific allegation] which would be adequate to support his conclusion that testimony as to that historical evidence was insufficient to support a downward departure, without being required to make controlled drug purchases.

Petitioner also alleges that he had informed his attorneys that he "not willing to do any proactive work for the government and my cooperation would not include making any controlled

---

[1] At this stage of the proceedings, the primary issue is whether an evidentiary hearing is necessary for a determination of some or all of petitioner's claims. The submission of evidence is thus not strictly necessary, particularly evidence such as the testimony of the petitioner and other witnesses as to which the court must make a credibility determination; however, submission of evidence can be helpful in that it may give the court a clearer idea of what facts might be proved at such a hearing.

drug transactions." Affidavit of Petitioner, doc. 134, exhibit A at 2. The detail he then provides demonstrates that even this limited conclusion is not accurate. Except as to Ken Vassel, one of his suppliers, petitioner does not indicate what he told his lawyers about his unwillingness to actively cooperate nor when he did so. As to Vassel, petitioner claims that he told his lawyers that he "would not hurt Vassel by making any controlled drug transactions involving Vassel." The court will presume, for purposes of the instant analysis only, that petitioner made his statements concerning Vassel prior to the time of the plea. He also states that "had my attorneys properly inquired of me" they would have known that another supplier was avoiding him since his arrest, and that his attorneys "knew or should have known" that he had had a falling out with the third dealer. Additionally, petitioner states that he informed Agent Nixon during his March 24, 2006, interview of three other individuals whom he knew were selling drugs and/or manufacturing crack cocaine. Id. at 4.

The details of petitioner's affidavit indicate not that petitioner made a blanket rejection of proactive cooperation, but rather that he communicated only that he would not do so against one of his prior dealers, that his attorneys "should have known" that there were impediments to proactive cooperation with the two other dealers with whom he had long-standing prior relationships, and that he had information concerning additional dealers. He also told them that his brother was involved, but later recanted that claim. These facts do not support his claim that he had nothing to be gained from pleading guilty and cooperating with the government, and certainly do not demonstrate that his attorneys knew that there was no possible benefit from a guilty plea.

Thus, petitioner's trial counsel could reasonably have believed that there was a possibility that petitioner could receive a downward departure recommendation from the government if he

9

cooperated with them, whether by providing detailed supplementary testimony against the dealers of whom he was aware, or performing proactive work for them, to the extent that he could, whether against one or more of the three dealers from whom he had generally bought drugs or some of the other dealers. In short, the granting of the downward departure was not assured, but reasonable attorneys could have based their advice upon that possibility, and could reasonably have advised petitioner to change his plea on that basis.

Petitioner's affidavit states that his attorneys told him that he had no chance to win at trial. Id. at 1-2.[2] The government arrested petitioner during a sale with an undercover informant, in possession of 73 grams of crack cocaine and 135 grams of powder cocaine; they then searched his home where they found more cocaine and crack cocaine, as well as ecstasy and two firearms. Petitioner's co-defendant, with whom he says that he had purchased the drugs seized by police when they were arrested, was cooperating with the government against him. The court previously denied (doc. 37) his attorneys' Motion to Suppress Evidence (doc. 31), which had challenged the constitutionality of the search of petitioner's home, and had granted (doc. 65) the government's two motions *in limine*, precluding his attorneys from disputing the legality of the search in arguments before the jury and from informing the jury of the possible sentence petitioner faced. The jury was selected on June 26, 2006, and trial was set to begin on July 12, 2006. Based on the evidence, Johnson's attorneys were not ineffective in believing, or

---

[2] "On July 07, 2006, I pled guilty … because my trial attorneys Robert A. Thomas and Will G. Phillips convinced me that, if I went to trial, the jury would find me guilty. My trial attorneys convinced me that the only way I could avoid a sentence of life imprisonment followed by at least a term of five years' imprisonment would be to win at trial (an option which my attorneys told me would no happen) or to plead guilty, provide cooperation and have the government recommend a sentence less than life." This statement undermines petitioner's claims that his attorneys did not explain the sentence he faced or the severity of his situation.

10

in causing petitioner to believe, that he would be convicted if he went to trial.

Reasonably effective counsel, weighing even a slim the possibility that defendant could obtain a downward departure by cooperation with the government against an almost certain conviction at trial on all pending counts, could have come to the conclusion that a guilty plea was the preferable course of action for petitioner. Were the court to disagree with either half of this equation, under the facts of this case the court could not find the attorneys' position to have been unreasonable. That advice, based on even a limited possibility of a reduced sentence, was not error.

Petitioner also argues, in passing, that his attorneys should have advised him to file a Motion to Withdraw his guilty plea pursuant to Rule 11(d)(2)(B) once they received the letter stating that he had not yet provided sufficient cooperation to warrant a downward departure. Not only are petitioner's predicate conclusions inaccurate, such motions are rarely granted and the grounds advanced by petitioner and the facts in this case do not present an adequate basis for such a motion. [3] *See e.g.* U.S. v. Badger, 925 F.2d 101, 104 (5th Cir. 1991) ("Unfulfilled expectations of a deal for a lighter sentence do not constitute a fair and just reason for allowing withdrawal of a guilty plea.") As discussed above, the government's letter of November 29,

---

[3] Rule 11(d)(2)(B) provides that a district court may allow withdrawal of a guilty plea at any time prior to sentencing for any fair and just reason. "There is no absolute right to withdraw a guilty plea." U.S. v. Medlock, 12 F.R.D. 185, 187 (11th Cir. 1994). "[T]he district court may consider the totality of the circumstances surrounding the plea," including the close assistance of counsel, whether the plea was knowing and voluntary, how it would affect conservation of judicial resources, and whether the government would be prejudiced. U.S. v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988). Petitioner has not demonstrated that he had a valid basis for such relief. Given the findings of the Eleventh Circuit on direct appeal and his own sworn statements during the plea colloquy, it is highly doubtful that petitioner could have shown that even one of these factors weighed in his favor. Plaintiff cannot show prejudice from the lack of such advice.

2006, did not preclude a downward departure but rather invited further cooperation to earn it. At the sentencing, the government said that, although petitioner had not provided substantial cooperation to date, the Rule 35 relief was still available in the event that he decided thereafter to cooperate with the government. The court can not find that petitioner's trial counsel was ineffective for failing to reverse course between the change of plea and the sentencing.

*Ineffective Assistance: Cruel and Unusual Punishment*

Petitioner next argues that his attorneys were ineffective for failing to raise and argue a constitutional challenge under the cruel and unusual punishment clause of the Eighth Amendment to the hundred-to-one ratio between crack cocaine and powder cocaine found in 21 U.S.C. § 841(b). The government notes the lack of precedent, whether cited by plaintiff or located in the government's research, holding that the hundred-to-one ratio constitutes cruel and unusual punishment. Nor has the court has found any such authority; rather, the contrary appears to have been settled law at the time of sentencing. *See e.g.* U.S. v. Mendoza, 876 F.2d 639, 641 (8th Cir. 1989) (finding that § 841(b)(1)'s mandatory minimum does not violate due process, or equal protection rights, or constitute cruel and unusual punishment); U.S. v. Whitehead, 487 F.3d 1068 (8th Cir. 2007) (mandatory life imprisonment for manufacturing and possessing more than 50 grams of cocaine base did not violate cruel and unusual punishment clause); U.S. v. Jackson, 59 F.3d 1421 (2nd Cir.), *cert. denied,* 517 U.S. 1139 (1995)(penalty scheme for cocaine base not violation of cruel and unusual punishment); U.S. v. Hill, 30 F.3d 48 (6th Cir.), *cert. denied,* 513 U.S. 1025 (1994)(in case involving cocaine base, sentence of life imprisonment without parole for third felony drug offense was not cruel and unusual punishment); U.S. v. Fisher, 22 F.3d 574 (5th Cir.), *cert. denied*, 513 U.S. 1008 (1994)(similar); U.S. v. Frazier, 981 F.2d 92 (3rd Cir.), *cert. denied*, 507 U.S. 1010 (1992)(similar).

12

Petitioner has failed to demonstrate that his attorneys were constitutionally ineffective for failing to raise this issue despite significant authority contrary to petitioner's position, and has failed to demonstrate prejudice by showing a reasonable probability that the trial court would have ruled in his favor had this issue been presented. There is no evidence in the record that petitioner would have received a shorter sentence had the hundred-to-one ratio been argued or applied.

*Ineffective Assistance: Equal Protection*

As part of his third ground for relief, addressed below, petitioner also argues that his attorneys provided ineffective assistance because they failed to argue to the trial court that the 100-to-1 crack to powder cocaine ration violated his right of equal protection under the Fourteenth Amendment. The court finds that this argument suffers from the same weaknesses as his ineffectiveness argument concerning the Eighth Amendment.

Prior to the sentencing in this case, the Eleventh Circuit had held that the disparity between crack and powder cocaine did not exhibit a racially discriminatory purpose which violated equal protection, regardless of any discriminatory impact of those provisions. U.S. v. Byes, 28 F.3d 1165 (11th Cir.), *cert. denied*, 513 U.S. 1097 (1994); *see* U.S. v. King, 972 F.2d 1259 (11th Cir. 1992) (no equal protection violation; rational basis for disparity shown). In light of binding precedent to the contrary, and without any showing of even a countervailing trend in the law, petitioner has failed to demonstrate that any competent attorney would have raised such an issue in connection with petitioner's sentencing. Plaintiff has failed to demonstrate either ineffectiveness or prejudice resulting from the failure to raise this issue.

*Ineffective Assistance: Failure to Argue for Downward Departure*

Johnson claims that his attorneys rendered ineffective assistance of counsel because they

13

did not request that the Court sentence him based on a crack-to-powder cocaine ratio less than 100-to-1. Petitioner cites decisions from two Circuits, U.S. v. Pickett, 475 F.3d 1347, 1355-56 (D.C. Cir. 2007) and U.S. v. Gunter, 462 F.3d 237, 241-43 (3rd Cir. 2006), as holding that a district court had discretion to consider the disparity between crack and powder cocaine sentencing under the Sentencing Guidelines in imposing sentence. Petitioner also cites U.S. v. Williams, 435 F.3d 1350 (11th Cir. 2006), in which a panel of the Eleventh Circuit found that a district court's sentence below the guidelines range in a crack cocaine case was not unreasonable, given its consideration of the policies stated in 18 U.S.C. § 3553(a). In Williams, the district court had held that a sentence of 188 months as calculated under the Guidelines was excessive where, though there was a significant prior criminal history, the conviction on which the defendant was being sentenced involved the sale of only $350.00 worth of crack cocaine. Id. at 1355.

The cases cited by petitioner for the proposition that the district court has the discretion to impose a sentence lower than that calculated under the Guidelines are inapposite. The Sentencing Guidelines have been held to be advisory. *See e.g.* U.S. v. Phaknikone, 605 F.3d 1099 (11th Cir. 2010). In the instant case, the sentence imposed was the minimum allowed under the statute; petitioner's submissions do not demonstrate that a district court can ignore a mandatory minimum sentence set by statute. *See* id., at 1112 ("statutory minimum sentences, as provided in section 924, still must be applied even though the Sentencing Guidelines are now only advisory")(*citing* U.S. v. Castaing-Sosa, 530 F.3d 1358, 1362 (11th Cir. 2008)). Petitioner has failed to demonstrate that his attorneys were ineffective because they did not argue that the trial court should impose a sentence lower than the mandatory minimum sentence set forth in 21 U.S.C. § 841 (b).

*Substantive Constitutional Issues*

Petitioner's fourth and fifth claims assert that his sentence was unconstitutional pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's equal protection clause. The government asserts that these claims were waived in the plea agreement, and that they were procedurally defaulted by petitioner's failure to raise them on direct appeal. In his Reply, petitioner argues only that he has shown an excuse for procedural default; his argument is that the waiver precluded him from raising those issues on appeal. Leaving aside the circularity of this argument concerning procedural default, the court finds that the petitioner waived his right to raise these constitutional claims in a collateral proceeding such as the instant § 2255 motion . See Plea Agreement, doc. 70, at ¶ 22-23.[4]

Petitioner has offered no basis for finding that his right to collaterally challenge his conviction and sentence has not been waived on any basis other than the exceptions contained in the plea agreement, none of which apply to his substantive constitutional challenges. The undersigned finds these claims have been expressly waived, that the plea colloquy contained

---

[4] The Plea Agreement provides as follows:

22. With the limited exceptions noted below, the defendant also waives his/her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

23. The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

    a. Any punishment imposed in excess of the statutory maximum;

    b. Any punishment that constitutes an upward departure from the guideline range; or     [sic] A claim of ineffective assistance of counsel.

thorough explanation and questioning concerning the effect of the waiver, that the plea was knowing and voluntary, and that the waiver is thus enforceable. *See* U.S. v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997) ( holding that "[w]aiver will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver.")

## Evidentiary Hearing

No evidentiary hearing is necessary or appropriate in this case. As discussed above, the court has taken petitioner's version of the facts as true, except where such facts are affirmatively contradicted by the record. No benefit would be gained by conducting such a hearing.

## Certificate Of Appealability

Pursuant to the changes to Rule 11 of the Rules Governing Section 2255 Proceedings which became effective December 1, 2009, the court addresses the appealability of the recommended denial of plaintiff's habeas petition. "A [COA] may issue only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004) (*quoting* Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " Miller-El v. Cockrell, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).

In the undersigned's view, the issues petitioner has raised in his motion are not

sufficiently substantial to justify the issuance of a certificate of appeal. Petitioner's claims focus on alleged errors by his attorneys at various stages of the criminal action; however, he has not demonstrated a constitutional deprivation of his right to reasonably effective counsel. To the extent that the denial of relief on petitioner's fourth and fifth grounds is denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" Slack v. McDaniel, 529 U.S. 473, 484 (2000). It is therefore recommended that the court find that no certificate of appealability should issue in this case.

## Conclusion

For the reasons set forth above, if is hereby RECOMMENDED that petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 be DENIED, and that no Certificate of Appealability should issue.

The attached sheet contains important information regarding objections to this recommendation.

DONE this 5th day of October, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).